IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Donald R. Yeager, :

    Plaintiff, :

  v. : Case No. 2:08-cv-1078

Michael J. Astrue, Commissioner : JUDGE FROST
of Social Security,

    Defendant. :

REPORT AND RECOMMENDATION

I. Introduction

Plaintiff, Donald R. Yeager, filed this action seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income. Those applications, which were filed on July 1, 2004 and June 22, 2004, respectively, alleged that plaintiff became disabled on May 24, 2004, as a result of a low blood count, abnormal liver study results, abdominal pain, and fatigue.

After initial administrative denials of his claim, plaintiff was afforded a hearing before an Administrative Law Judge on March 17, 2008. In a decision dated July 25, 2008, the Administrative Law Judge denied benefits. That decision became the final decision of the Commissioner when the Appeals Council denied review on October 20, 2008.

Plaintiff thereafter timely commenced this civil action. The record of administrative proceedings was filed in this Court on January 16, 2009. Plaintiff filed a Statement of Errors on February 9, 2009, to which the Commissioner responded on April 15, 2009. Although plaintiff did not file a reply brief, he

filed a motion to remand on August 18, 2009, to which the Commissioner responded on August 27, 2009. The matter is now ripe for decision.

## II. The Lay Testimony

Plaintiff testified to the following facts at the administrative hearing. Plaintiff was 35 years old on the date of the hearing. (Tr. 562). He did not finish high school and was in special education classes. Id. He last worked as a forklift operator through a temporary services agency, a job which required him to be on his feet more than half the day and to lift twenty to thirty pounds. (Tr. 562-63). Before that, he worked for his brother texturing ceilings. He had also worked at a truck wash. (Tr. 563-64). Additionally, he held jobs at a factory and as a janitor. (Tr. 564-65).

Plaintiff has back pain which is constant. He has been told it is muscle pain. (Tr. 568). It is made worse by bending over, picking things up, or going up and down stairs. (Tr. 568-69). He can sit for ten to fifteen minutes before needing to get up and walk around, and he has to take a break if he stands for too long. (Tr. 570). He can walk half a block and lift five to ten pounds. (Tr. 571).

Plaintiff has also been treated for depression. Id. It has caused him to gain weight. He also has a sleep disorder. His depression makes him sad and he has occasional crying spells. (Tr. 573). He does a few household chores and some outside jobs like mowing the grass, but he becomes short of breath and had back pain. (Tr. 575-76). He left his last job because he had not obtained a G.E.D., and thought he would still be working there had he been able to get that degree. (Tr. 580). He had not used alcohol in the past year. (Tr. 581). He thought that his depression, back pain, and being a slow learner were the

factors keeping him from working. (Tr. 584). However, he still might have been able to do his prior factory job. (Tr. 587). His depression is helped by medication and counseling. (Tr. 590-91).

III. The Medical and School Records

The record includes documents from plaintiff's school years. They confirm that he was in developmentally handicapped classes. His IQ test scores exceeded 70, however, with a composite score of 76 when he was in the tenth grade. At that time, his adaptive behavior was seen as consistent with his ability levels measured by the Woodcock-Johnson Scales of Independent Behavior, which placed him in the second or third percentile in four of five areas of adaptive functioning. (Tr. 125-34).

Pertinent medical records reveal the following. Plaintiff underwent a psychological evaluation on May 22, 2001 at the request of Fairfield County. Testing placed him in the mild range of mental retardation. His full scale IQ was measured at 70. He appeared uncomfortable in social settings. His diagnoses included a mixed passive-aggressive, dependent and avoidant personality disorder. (Tr. 138-43). A similar evaluation done three years later by Dr. Ray also indicated a dependent personality disorder as well as alcohol abuse. However, Dr. Ray described plaintiff's mental functioning as borderline intellectual functioning rather than mild mental retardation, although he noted that "[c]ollateral information is also indicative of significant adaptive-behavioral deficits." (Tr. 175-87).

Dr. Woo, one of plaintiff's treating physicians, completed a report on July 8, 2004, essentially limiting plaintiff to light work activity due to a history of abdominal discomfort. (Tr. 155-56). Dr. Johnson, another treating source, expressed much the same view on a similar form. (Tr. 168-69).

Dr. Miller performed a psychological evaluation on September 21, 2004. During this evaluation, plaintiff reported significant depression, beginning in July, 2003, when his children were taken away from him. His concentration was fair and he showed anxiety when completing tasks. His full scale IQ was measured at 66 and he appeared to be functioning within the mild mental retardation range of intelligence. He read at a third grade level. Dr. Miller thought that plaintiff was mildly to moderately impaired in his ability to understand, remember and carry out simple job instructions, was moderately impaired in his ability to interact with others, was mildly impaired in his ability to maintain attention and concentration, and was moderately impaired in his ability to deal with stress and pressure in a work setting. (Tr. 188-92). A follow-up consultation done in 2007 showed similar results, except that his IQ was measured at 59 and his reading level had regressed. Nevertheless, Dr. Miller changed his diagnosis of mild mental retardation to borderline intellectual functioning. (Tr 454-60). He later explained that he did so because plaintiff did not meet the DSM-IV-PR criteria for mental retardation because he did not show the required level of impairment in two of these areas: communication, self-care and home living, social interaction, and use of community resources. (Tr. 513-14).

A state agency reviewer, Dr. Pawlarczyk, completed a mental residual functional capacity assessment in which he indicated that plaintiff had mild mental retardation, including deficits in adaptive functioning manifested prior to age 22, but that there was no other significant impairment, so that plaintiff did not meet Listing 12.05(C). Otherwise, he thought that plaintiff could work in an environment requiring little contact with others and without strict production quotas. (Tr. 205-22). Shortly after that evaluation was done, plaintiff was diagnosed with

degenerative disk disease at L5-S1 based upon an MRI. (Tr. 223-24).

In a letter dated July 22, 2005, Dr. Woo stated he was treating plaintiff both for low back pain and also left hand pain and paresthesia. (Tr. 292). He subsequently had injections and other procedures designed to reduce his back pain, and also did physical therapy. Dr. Key's office notes indicate that plaintiff still had a diagnosis of chronic low back pain and was being treated for that condition in 2006 and 2007, and that Dr. Key considered him to be unemployable due to chronic low back pain and depression. (Tr. 364-71, 487). A consultative physical examination performed in 2007 indicated that the back pain was probably the result of muscle spasm and strain as opposed to degenerative disease, which did not appear on a 2007 X-ray study. The examiner, Dr. Harris, did not believe that there were many restrictions on plaintiff's ability to sit, stand, or lift, although the form he completed limited plaintiff to lifting no more than 20 pounds and to occasional climbing of stairs, ramps, ladders and scaffolds. (Tr. 465-77).

### IV. The Vocational Testimony

A vocational expert, Mr. Brown, also testified at the administrative hearing. He characterized plaintiff's past work as being either unskilled or semi-skilled and performed at the medium or light exertional levels. (Tr. 597-98) If plaintiff were limited to light work involving only simple repetitive work with no production quotas or written instructions, he could still do the janitorial and truck washing jobs. (Tr. 598-600). He could also do about 50% of the light unskilled jobs in the economy. (Tr. 600).

### V. The Administrative Decision

Based on the above evidence, the Commissioner found that plaintiff suffers from severe impairments which were described as

borderline intellectual functioning, affective and anxiety-related disorders, personality disorder, and degenerative disease of his lumbar spine.  With these impairments, he was limited to the performance of a reduced range of light work and could do only simple repetitive tasks in a work environment with minimal interaction with others and no strict production quotas or written job instructions.  The Commissioner found that these restrictions are consistent with plaintiff's past work as a cleaner and a housekeeper/cleaner.  As a result, plaintiff was found not to be entitled to disability benefits.  The Commissioner rejected any claim for disability under Listing 12.05(C) because plaintiff made passing grades in school, was viewed as suffering from borderline intellectual functioning rather than mild mental retardation in 1988, and had a history of successful work activity.  The Commissioner also noted that "[t]he later IQ scores may reflect diminished effort when evaluated in context with other testing and the inconsistent allegations of the claimant, who is not found to be entirely credible ...."  (Tr. 15).

## VI. <u>Legal Analysis</u>

In his statement of errors, plaintiff raises a single issue. He contends that he met the diagnostic criteria for disability established by Sections 12.05(b) and 12.05(C) of the Listing of Impairments.  In his motion to remand, he argues that new and material evidence, namely an October, 2008 psychological evaluation, supports a remand for further proceedings under 42 U.S.C. §405(g), sentence six.  The Court will first evaluate the assignment of error under the substantial evidence standard. Because it will conclude that the assignment of error should be sustained, it will not be necessary to address the separate issue of whether a sentence six remand is appropriate.

<u>Standard of Review</u>.  Under the provisions of 42 U.S.C.

Section 405(g), "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" Id. LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976). The Secretary's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Secretary's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Secretary's decision must be affirmed so long as his determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

 Plaintiff correctly notes that in order to satisfy Listing 12.05, a claimant must meet both the specific criteria listed under one or more of the subsections to the Listing, such as subsections (B) or (C), and also show that he or she had deficits in adaptive functioning initially manifested before age 22. He points to his school records which show such deficits in four of five areas tested as evidence that he met the requirements of the introductory paragraph to Listing 12.05. He then argues that because he scored 59 or less on IQ tests as an adult, or,

alternatively, scored between 60 and 70 and had at least one other limiting condition, he satisfied the requirements of both subsections (B) and (C).

In response, the Commissioner argues that there was a substantial basis for finding that plaintiff did not meet the diagnostic criteria for mental retardation. Citing to the DSM-IV-TR, the Commissioner asserts that the high school IQ testing did not show significantly subaverage intellectual functioning, and that plaintiff's ability to hold various jobs was inconsistent with his claim of disability due to mental retardation.

After reviewing the stated rationale which is actually contained in the administrative decision, and which is quoted in substantial part above, the Court finds that rationale inadequate to support the Commissioner's decision. This is a case where the most compelling claim presented by plaintiff is the assertion that he has satisfied either of two subsections of Listing 12.05. There is no question that his IQ scores all fall within the ranges required by either subsection of the Listing. The Commissioner completely discounted these scores in a one-sentence determination that they "may" have reflected inadequate effort. There is no evidence from any of the reports of the professionals who administered the tests that this was the case, and the Commissioner's finding therefore lacks substantial evidence.

Further, as plaintiff correctly points out, the fact that plaintiff may have been able to hold employment or obtain a driver's license does not absolutely preclude him from establishing disability under Listing 12.05. See, e.g., Brown v. Secretary of H.H.S, 948 F.2d 268 (6th Cir. 1991); see also Manning v. Commissioner, 2009 WL 243014 (S.D. Ohio January 29, 2009).

The focus in the Commissioner's memorandum on Dr. Miller's

interrogatory answers and on the application of the DSM-IV-TR criteria as bases to sustain the administrative decision, is, unfortunately, not to be found in the administrative decision. Additionally, that decision does not discuss the significance of the Woodcock Johnson scores showing significant deficits in age-related functioning while plaintiff was in high school, nor the fact that one of the state agency reviewers, Dr. Pawlarczyk, specifically found that plaintiff had satisfied all of the criteria of Listing 12.05(C) except for the requirement that plaintiff suffer from another medically determinable impairment that significantly limited his work activities. (Tr. 209). The Commissioner did find at least one other impairment, but did not discuss why, under those circumstances, Dr. Pawlarczyk's findings were rejected, or even acknowledge the inconsistency. Under these circumstances, a remand is necessary in order for the Commissioner to discuss all of the factors relating to the Listings and to identify why (if the claim is again denied) it has been decided that the criteria for Listings 12.05(B) and/or (C) have not been satisfied.

### VII. Recommended Disposition

For the foregoing reasons, it is recommended that the plaintiff's statement of errors be sustained to the extent that the case is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four. It is further recommended that, should this recommendation be accepted, the plaintiff's motion for a sentence six remand be denied as moot.

### VIII. Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the

objection(s). A judge of this Court shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp<br>
United States Magistrate Judge